IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-30004
Summary Calendar
_____

CLEMENT F. PERSCHALL, JR,

Plaintiff-Appellant,

v.

STATE OF LOUISIANA;

Defendant-Appellee

and

RONALD CHISOM; MARIE BOOKMAN; WALTER WILLARD; HENRY
DILLON, III; LOUISIANA VOTER REGISTRATION/EDUCATION
CRUSADE,

Intervenors-Appellees.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
(95-CV-1265-A)
_____

February 18, 1999

Before KING, Chief Judge, and BARKSDALE and STEWART, Circuit
Judges.

PER CURIAM:[*]

    Plaintiff-appellant Clement F. Perschall, Jr., a practicing

attorney and resident of Orleans Parish, Louisiana, alleges that

1992 Louisiana Acts 512 violates the Louisiana Constitution and

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the Fourteenth Amendment.  The district court remanded plaintiff-appellant's claims under the Louisiana Constitution to state court, and the Supreme Court of Louisiana issued an opinion declaring the act unconstitutional in its entirety.  The district court then dismissed plaintiff-appellant's remaining claims as moot.  We affirm.

I. BACKGROUND

In 1987, intervenors-appellees (Chisom) filed a complaint on behalf of a class of approximately 135,000 black registered voters in Orleans Parish challenging, under Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973 (1994) (as amended), the method by which Louisiana Supreme Court justices were elected.  See Chisom v. Edwards, No. 86-4075 (E.D. La.).  At the time, Louisiana law provided that Orleans Parish was in the first supreme court district; the first district also included St. Bernard, Plaquemines, and Jefferson parishes and elected two of the seven supreme court justices.  See LA. REV. STAT. ANN. § 13:101 (1983).  The remaining five justices were elected in single-member districts.  See id.

Chisom and the State of Louisiana entered into a settlement agreement, and the district court entered a consent decree on August 21, 1992.  The consent decree was dependent on the Louisiana legislature enacting legislation that would create an additional position for a judge on the Louisiana Court of Appeal who would be assigned to the Louisiana Supreme Court.  This temporary judgeship would expire when a justice took office from

2

a newly created seventh district consisting of Orleans Parish; the justice would take office upon a vacancy in the first district or after a regular election in the year 2000. The Louisiana legislature enacted this legislation in June 1992. See 1992 La. Acts 512 (Act 512).

Plaintiff-appellant Clement F. Perschall, Jr. (Perschall) filed this petition for declaratory judgment against the State of Louisiana in state court on January 26, 1995. Perschall alleged that Act 512 violates several provisions of the Louisiana Constitution and the Fourteenth Amendment. See LA. CONST. art. V, § 3 ("The supreme court shall be composed of a chief justice and six associate justices."). Louisiana removed Perschall's petition to the United States District Court for the Middle District of Louisiana under 28 U.S.C. § 1441(b), and the case was transferred to the Eastern District of Louisiana on April 25, 1995.

On July 5, 1995, the district court remanded Perschall's state law issues to the state court under the Pullman abstention doctrine and stayed further proceedings on the single federal constitutional claim over which it retained jurisdiction.[1] The

---

[1] See Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496 (1941). Under the Pullman doctrine,

> a federal court may, and ordinarily should, refrain from deciding a case in which state action is challenged in federal court as contrary to the federal constitution if there are unsettled questions of state law that may be dispositive of the case and avoid the need for deciding the constitutional question.

17A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4242 (2d

court attempted to clarify the remand on August 3, 1995 by ordering that the "constitutionality of Act 512 is the sole issue remanded to the [state court], and . . . this Court retains jurisdiction over all other issues in this case."[2]

The Louisiana Supreme Court exercised supervisory jurisdiction and granted certiorari, ordering that the entire case as remanded be brought to the supreme court for decision. See Perschall v. State of Louisiana, 697 So. 2d 240, 249 (La. 1997). The court found that Act 512 effectively creates an eighth position on the supreme court in violation of the Louisiana constitution and declared the act unconstitutional. See id. at 259-60. The court decided that Act 512 and the Chisom consent decree "are separate and independent methods by which the negotiated remedy was implemented" and therefore the court as it was then composed "shall continue to function as a de jure court with its actions valid and effectual."[3] Id. at 260. The court finally rejected Perschall's argument that its finding of

---

ed. 1988).

[2] Perschall alleges that this second order requires that the district court consider appropriate remedies after the Louisiana Supreme Court found Act 512 unconstitutional under state law, including whether all affected Louisiana Supreme Court decisions should be vacated. Because we find Perschall does not have a sufficient personal interest in this claim to avoid mootness, we need not decide whether his interpretation of the district court's order is correct or whether such an interpretation would be consistent with the Pullman abstention doctrine.

[3] Perschall does not challenge the court's use of the Chisom consent decree as an independent basis for its composition or for the validity of its opinions.

4

unconstitutionality renders void all decisions by the court during the time Act 512 was effective, relying on "long-established" Louisiana authority.  Id. at 260-61.

Following the Louisiana Supreme Court's decision that Act 512 is unconstitutional, the district court dismissed Perschall's remaining claims as moot.  See Perschall v. Louisiana, No. CIV.A.95-1265, 1997 WL 767703 (E.D. La. Dec. 10, 1997).  The district court reasoned that Perschall's state law claims were resolved by the Louisiana Supreme Court's decision, which obviates consideration of Perschall's federal constitutional claims.  See id. at *4.  The district court found that the Louisiana Supreme Court had granted Perschall all the relief that he requested in his petition, and that "any further proceeding has no possibility of creating any impact on the parties."  Id. Finally, the district court rejected Perschall's request that it consider appropriate general and equitable relief, relying on the Louisiana Supreme Court's decision that its actions during the time Act 512 was effective are valid under well-settled law.  See id. at *5.  Perschall timely appeals.

## II. DISCUSSION

Perschall argues that the district court erred in dismissing his claim for mootness because the district court remanded only the question of whether Act 512 was constitutional and did not relinquish its jurisdiction to determine an appropriate remedy. Perschall also argues that the district court did not adjudicate his federal constitutional claims and that the availability of a

5

remedy under the Fourteenth Amendment is sufficient to prevent his case from becoming moot. Finally, he argues that the district court should have found that his claims were not moot because the controversy is capable of repetition.

## A. Perschall's Claims Are Moot

We review the district court's determination of mootness de novo. See Jews for Jesus, Inc. v. Hillsborough County Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998); Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 647 (2d Cir. 1998). It is well-established that the jurisdiction of federal courts extends only to actual cases and controversies and that we therefore lack jurisdiction in cases that become "moot." See U.S. CONST. art. III, § 2; Spencer v. Kemna, 118 S. Ct. 978, 983 (1998). We have stated that "[a] controversy becomes moot where, as a result of intervening circumstances, there are no longer adverse parties with sufficient legal interests to maintain the litigation." Chevron U.S.A., Inc. v. Traillour Oil Co., 987 F.2d 1138, 1153 (5th Cir. 1993). This means that the plaintiff "'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Spencer, 118 S. Ct. at 983 (quoting Lewis v. Continental Bank Corp., 494 U.S. 472, 477 (1990)). If the plaintiff is "divested of all personal interest in the result" or the parties do not "maintain a 'concrete interest in the outcome,'" a federal court lacks jurisdiction and should dismiss the claim. Dailey v. Vought Aircraft Co., 141 F.3d 224, 227 (5th

6

Cir. 1998) (quoting <u>Firefighters Local Union No. 1784 v. Stotts</u>, 467 U.S. 561, 571 (1984)).

Perschall fails to demonstrate any concrete interest in this litigation.  In his appellate brief, he argues that the allegedly unconstitutional composition of the Louisiana Supreme Court "bears upon [his] ability to practice his livelihood."  Perschall complains that "as an active legal practitioner, [he] would have to address the constitutional composition of the Louisiana Supreme Court with any client he represents before the Court." We find this argument unpersuasive.  We initially question Perschall's perceived need to address the constitutionality of the supreme court with his clients.  The supreme court has already found that its composition and decisions are valid under long-standing authority and the <u>Chisom</u> consent decree. Furthermore, even if Perschall does need to "address the constitutional composition" with his clients, we find that this alleged injury does not sufficiently affect his ability to practice his livelihood to enable him to maintain this action.

The only support that Perschall identifies for his claim that the alleged unconstitutional composition of the supreme court "bears upon [his] ability to practice his livelihood" is <u>Lakeside Imports, Inc. v. State of Louisiana</u>, 639 So. 2d 253, 255 (La. 1994) (recognizing a fundamental right to pursue a lawful trade and earn a living without substantial government interference).  In <u>Lakeside Imports</u>, the Louisiana Supreme Court upheld a Sunday closing law after finding that the plaintiff, an

automobile dealer, failed to show that he was deprived of his right to engage in the sale of new and used cars and trucks and produced no evidence that he suffered a pecuniary loss by being forced to close on Sunday. See id. at 255-56. Similarly, Perschall does not allege that he has suffered a pecuniary loss as a result of the composition of the supreme court or that its composition deprives him of his ability to practice law. Although we have been reluctant to find mootness when attorneys challenge actions that may adversely affect their reputations, Perschall alleges no injury to his livelihood in that respect either. See Dailey, 141 F.3d at 227-29 (finding no mootness where formerly disbarred attorney is reinstated because the disbarment may adversely affect her professional career); see also Agee v. Paramount Communications Inc., 114 F.3d 395, 399 (2d Cir. 1997) ("[W]e have some concern about the application of the mootness doctrine to [an attorney] . . . [where] his reputation -- the basis of the attorney's livelihood -- is at stake."). In short, we find no evidence that Perschall's practice of law has been injured in any legally cognizable way, and we therefore cannot sustain his action on the basis of its alleged bearing on his ability to practice his livelihood.

Perschall also argues that his right to vote for justices of the Louisiana Supreme Court is infringed and that he is deprived a republican form of government[4] by the present composition of

---

[4] We note that Perschall's claim that the composition of the Louisiana Supreme Court violates his federal constitutional right to a republican form of government is a political question and

the Louisiana Supreme Court.  These arguments are insufficient to avoid a finding of mootness because they are too general and fail to demonstrate any individualized injury.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 573-74 (1992) ("We have consistently held that a plaintiff raising only a generally available grievance about government -- claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large -- does not state an Article III case or controversy."); Ex parte Levitt, 302 U.S. 633, 634 (1937) (per curiam) (dismissing suit contending that Justice Black's appointment to United States Supreme Court violated the Ineligibility Clause because private individual must "show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action and it is not sufficient that he has merely a general interest common to all members of the public").  We therefore agree with the district court's conclusion that Perschall's claims are moot.

## B. The Mootness Exception

Perschall argues that this case falls within an exception to the mootness doctrine for cases that are "capable of repetition, yet evading review."  Perschall states that he will continue to have cases in his role as an attorney that may require appearances before the Louisiana Supreme Court and that he will

therefore nonjusticiable.  See Baker v. Carr, 369 U.S. 186, 218-224 (1962) (citing Luther v. Borden, 48 U.S. (7 How.) 1 (1849)).

9

be obliged to assert on behalf of any such client the unconstitutional composition of the court.  Perschall asserts that each client will have an individual right to litigate this issue.

The "capable of repetition, yet evading review" exception to mootness "'applies only in exceptional situations.'"  Spencer, 118 S. Ct. at 988 (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 109 (1983)).  The exception requires that (1) the duration of the challenged action is too short to enable the parties to litigate fully prior to cessation or expiration, and (2) there is a reasonable expectation that the same party will again be subject to the same action.  See id.; Henschen v. City of Houston, 959 F.2d 584, 589 (5th Cir. 1992).

Perschall does not argue, and we find no evidence suggesting, that the duration of the challenged action here is always so short as to evade review.  Perschall argues that it is likely that the issue will arise again when he represents clients before the Louisiana Supreme Court, but does not allege that there will be no opportunity to litigate fully the composition of the court at that time.  Perschall's claim is therefore not a controversy evading review, and the district court correctly dismissed the claim as moot.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.